# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

CHASITY BELL,

     Plaintiff,

v.                                 Case No. 8:21-cv-2455-WFJ-AAS

HOBBY LOBBY STORES, INC.,

     Defendant.

_____/

## <u>ORDER</u>

Before the Court is Defendant's Motion for Summary Judgment and Statement of Undisputed Facts with attachments (Dkts. 22 & 23), Plaintiff's Response in Opposition and Statement of Disputed Facts with attachment (Dkts. 25 & 26), Defendant's Reply (Dkt. 29), Defendant's Response to Plaintiff's Statement of Disputed Facts (Dkt. 30), and Defendant's Rebuttal (Dkt. 38).  The Court conducted a hearing with argument of counsel.  After careful consideration of the submissions of the parties, additional briefing, and the entire file, the Court concludes summary judgment is due to be granted.

## BACKGROUND

In this removed case, Plaintiff Chasity Bell sues her former employer for race and gender discrimination pursuant to the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01 *et seq*.  Dkt. 1-2.  At the hearing before this Court, Plaintiff

appropriately conceded that there is no record support for her gender discrimination claim.  What remains is Plaintiff's claim of race discrimination.

On December 14, 2017, Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby") hired Plaintiff as a seasonal temporary employee at its store in Clearwater, Florida.  *Id.* ¶ 8.  By mid-August 2018, the store manager promoted her to "Fabric Department Lead."  *Id.* ¶ 12.  In her Complaint, Plaintiff states that she is an African American.  *Id.* ¶¶ 31, 45.  Terry Bennett (white male) was the store manager.  *Id.*  The co-manager of the store was Anolan Guzman (Hispanic female).  *Id.* ¶ 8.

As Fabric Department Lead, Plaintiff managed her own department as well as two others—the Sewing Department and the Needle Art Department.  *Id.* ¶ 14.  These latter two departments were not staffed with "lead" employees.  *Id.*  As a lead, Plaintiff had no full-time staff members to help her in any of the three departments.  *Id.* ¶ 15.  Other non-lead, part-time employees would assist Plaintiff, but there was no guarantee she would have the staff necessary to complete her work.  *Id.* ¶¶ 15−16.

Plaintiff's duties included lifting heavy bolts of fabric weighing up to 75 pounds.  *Id.* ¶ 13.  She lifted and carried the bolts to cut cloth for customers and to periodically execute a reset or rebuild of the department.  *Id.* ¶¶ 17, 22−23.  A reset or rebuild entails removing and weighing every bolt of fabric on the floor,

rearranging the shelves, and restocking the shelves with fabric.  *Id.* ¶ 17, 22; Dkt. 23-4 at 26.

The leads from all the departments were required to help with every department's resets.  Dkt. 23-4 at 29.  All leads were responsible for unloading the truck and breaking down the freight on delivery mornings, in addition to staying late Fridays until every department was fully stocked and ready for opening on Saturday mornings.  *See* Dkt. 23-9 at 5, 9−10.

In February 2019, Plaintiff began asking Bennett for additional help.  Dkt. 1-2 ¶ 19.  According to Plaintiff, Bennett would always respond, "I cannot get you additional people, but I can get you additional hours."  Dkt. 23-4 at 24, 27.  Plaintiff asked Bennett several more times for additional help.  *Id.* at 27.  In April 2019, when Plaintiff again requested assistance from Bennett, he allegedly repeated that he could not provide additional staff to help her, but he would allow her to work more hours to complete the job.  Dkt. 1-2 ¶ 22.

In early May 2019, Plaintiff suffered workplace back injuries after carrying a large bolt of fabric.  *Id.* ¶ 23; Dkt. 25-1 ¶ 12.  She took a leave of absence and never returned to work.  Dkt. 23-4 at 17, 44; Dkt. 25-1 ¶ 13.  Her employment with Defendant officially ended in mid-November 2019.  Dkt. 1-2 ¶¶ 26, 27.  The parties dispute whether Plaintiff voluntarily resigned or was terminated.  Plaintiff was never disciplined during her employment.  Dkt. 23-4 at 30.

On August 14, 2019, prior to the end of her employment, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") based on gender and color. Dkt. 23-17 at 2. She checked two of the ten boxes on the form—"color" and "sex." *Id*. She did not check the "race" box. *Id*. She wrote on the charge that she had been "subjected to discrimination due to [her] color (dark) and sex (female)." *Id*. Nowhere in her description does she mention the terms "African American" or "black."

The EEOC issued a dismissal and notice of right to sue in October 2020. Dkt. 23-16. In September 2021, Plaintiff filed a lawsuit in Florida state court under Florida law. Dkt. 1-2. Her state-court complaint, which is the operative pleading in this removed action, alleges race and gender discrimination but does not allege discrimination based on the color or tone of her skin. *See id.*

Defendant argues that Plaintiff has failed to exhaust her administrative remedies for this racial discrimination claim. Dkt. 22 at 9−11. As to the merits, Defendant contends that Plaintiff suffered no adverse action, nor can Plaintiff show pretext on the part of Defendant. *Id.* at 13−14, 17−19. Plaintiff counters that she can establish a convincing mosaic of disparate treatment based on racial discrimination. Dkt. 26 at 3−6.

**LEGAL STANDARD**

4

On summary judgment, the Court reviews the record, and all its inferences, in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Where the parties attempt to create an issue of fact through the use of affidavits, an affidavit "may be disregarded if it 'flatly contradict[s]' earlier deposition testimony without explanation." *Pivac v. Component Servs. & Logistics, Inc.*, 570 F. App'x 899, 901 (11th Cir. 2014) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986)). In reviewing discrepancies, the Court must be careful not to determine the witness's credibility or weigh the evidence. *Id.*; *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## DISCUSSION

### I. Failure to Exhaust

The FCRA is patterned after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Courts examining FCRA claims may therefore apply Title VII case law. *See Arnold v. Heartland Dental, LLC*, 101 F. Supp. 3d 1220, 1224–25 (M.D. Fla. 2015).

Before bringing a Title VII employment discrimination claim in court, a plaintiff must exhaust administrative remedies by filing a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Gregory v. Ga. Dep't of Human Res.*,

355 F.3d 1277, 1279 (11th Cir. 2004) (*per curiam*).  Exhaustion gives the EEOC the "first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Gregory*, 355 F.3d at 1279 (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).  After the EEOC's resolution of the charge, a plaintiff's "judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id*. at 1280 (citation omitted).  Courts are cognizant not to allow procedural technicalities to preclude claims brought under Title VII.  *Id*. at 1280 (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460–61 (5th Cir. 1970)); *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) (citing *Sanchez* and *Gregory*).

### A.   The EEOC Charge

Title VII prohibits employers from discriminating against employees on the basis of their "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Employment discrimination law distinguishes between race and color. *See Gill v. Bank of Am. Corp.*, No. 2:15-cv-319-FtM-38CM, 2015 WL 4349935, at *4 (M.D. Fla. July 14, 2015) (collecting cases).  "Color" is "commonly understood [to mean] pigmentation, the complexion, or skin shade or tone." *Id*. (quoting EEOC Compliance Manual § 15-III, at 950–51 (Apr. 19, 2006)).  Color

6

discrimination is based on "the lightness, darkness, or other color characteristic of the person." *Id*. "Even though race and color clearly overlap, they are not synonymous" and "can occur between persons of different races or ethnicities, or between persons of the same race or ethnicity." *Id*.

In Plaintiff's EEOC charge, she checked the box "color." She did not check the box "race." The determination of exhaustion does not end here but rather continues, requiring examination of the facts as alleged in the body of the written charge located below the boxes. Indeed, this description "matters most for determining what can reasonably be expected to grow out of an EEOC charge." *Patterson*, 38 F.4th at 1345 (first citing *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018); then citing *Sanchez*, 431 F.2d at 462).

Turning to the written charge, Plaintiff uses the word "dark" four times as the basis for discrimination. Dkt. 23-17. The body of Plaintiff's statement of discrimination in the charge reads as follows:

I have been subjected to discrimination due to my *color (dark)* . . . .

. . . .

I believe I have been discriminated against in violation of [Title VII and the FCRA] on the basis of ***color (dark)*, sex (female)** for the following reasons:
a.      Starting in February 2019, and continuing, I have asked my store manager, Terry, for additional help, as I was the only employee running three departments.
b.      I was told that I could be given additional hours, however that is all the help he would give me.

7

c.    I am not able to take my scheduled breaks, except when the store is having a corporate audit and the auditor is present.
d.    I never get sufficient help and am frequently called to other tasks. This has led to a stress and injury.
e.    I am the only person in the store to suffer these work conditions and I feel that it is because I am a female with *dark skin*.
f.    I believe I have been subjected to discrimination due to my *color (dark)* and sex (female).

*Id.* at 2 (italics added).

Three times in this charge Plaintiff uses the adjective "color" preceding "dark."  A fourth time, Plaintiff states she is the only employee who was not allowed to take breaks and who never received sufficient help because she is a "female with dark skin."  *Id.*  Plaintiff never mentions or discloses her race.  Plaintiff describes herself in terms of color (i.e., dark), not race (e.g., Black).  The words in the charge used to describe the allegedly discriminatory acts are limited to color discrimination.  The judicial complaint, in turn, is limited to the scope of the charge.

B.   *The Judicial Complaint*

Plaintiff's Complaint alleges racial discrimination on the basis that she "is an African American."  Dkt. 1-2 ¶¶ 20, 31, 39.  Judicial claims are permitted if they "amplify, clarify, or more clearly focus" the discrimination grievances alleged in the EEOC charge.  *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (citation omitted).  Any new, previously undisclosed, acts of discrimination are not properly alleged in a judicial complaint.  *Id*.

8

The Complaint, like the charge, alleges that Plaintiff was the only employee who was responsible for three departments, was denied additional help to complete her work, and was not able to take scheduled breaks.  Dkt. 1-2 ¶¶ 15, 18–20, 36–38.  The Complaint, unlike the charge, attributes this treatment to race discrimination—"Mr. Bennett did not treat white department leads the same way he treated [Plaintiff], an African American employee."  *Id.* ¶ 39.  Save this allegation, the Complaint does not state any facts of racial animus; for example, no comments were allegedly made or overheard referring to race (or color).

The appropriate question to determine exhaustion is whether the claims in the complaint could reasonably be expected to grow out of the charge of discrimination.  *Gregory*, 355 F.3d at 1280.  Color and race are separately protected categories.  *Gill*, 2015 WL 4349935, at *4 (citing *Walker v. Sec'y of Treasury, I.R.S.*, 713 F. Supp. 403, (N.D. Ga. 1989)).  A claim of color discrimination is not synonymous with a claim for race discrimination.  *Id.* at *4.  In her EEOC charge form, the plaintiff in *Gill* checked the box for race and described herself in the charge as "Black."  *Id.*  The *Gill* plaintiff made no mention of color discrimination.  *Id.*  The district court dismissed her judicial complaint for color discrimination because her EEOC charge was "devoid of allegations based on the pigmentation, complexion, hue, shade, or tone of [her] skin."  *Id.*  The court

noted that the *Gill* plaintiff's identification as "Black" in her judicial complaint

framed the issue as one of race, and not skin tone.  *Id*.

To the extent *Gill* is not precisely on point (the charge in *Gill* concerned race

and lawsuit concerned color), Defendant relies on *Howell v. North Carolina*

*Central University*, No. 1:16-cv-576, 2017 WL 2861133 (M.D. N.C. July 5, 2017)

and *Jones v. Jefferson Parish*, No. 12-2191, 2013 WL 871539 (E.D. La. Mar. 8,

2013).  In both *Howell* and *Jones*, the plaintiffs checked the box for color, not race,

on their EEOC charge forms.  *Howell*, 2017 WL 2861133, at *6; *Jones*, 2013 WL

871539, at *4.  Each court found the respective plaintiff had failed to exhaust

administrative remedies to bring a judicial complaint for race discrimination.

*Howell*, 2017 WL 2861133, at *6; *Jones*, 2013 WL 871539, at *5.  In both cases,

the courts found that the EEOC charges of discrimination were based on color—or

the pigmentation, complexion, or skin shade or tone—and not race.  *Howell*, 2017

WL 2861133, at *7; *Jones*, 2013 WL 871539, at *5.

Here, Plaintiff's judicial complaint does not mention her color but only her

race—African American.  In contrast, her EEOC charge claims she was treated

poorly or differently because of her dark skin color.[1]  In her charge, Plaintiff never

---

[1] As noted by Defendant, *El-Scari v. Comprehensive Mental Health Services*, No. 4:19-179-cv-RK, 2019 WL 5386489 (W.D. Mo. Oct. 21, 2019), is distinguishable.  In distinguishing both *Howell* and *Jones*, the *El-Scari* court noted that Ms. El-Scari did not mention skin tone in her EEOC charge but specifically included that she was Black.  *Id*. at *5.  The court found that it could be reasonably expected that the EEOC investigation would include race discrimination. *Id*.

describes the group of individuals being treated better than she, but her Complaint alleges that white lead employees were treated better than her.  Focusing on the scope of the Complaint, the Court finds that Plaintiff either 1) abandoned her claim for color discrimination when she filed a judicial complaint for race discrimination or 2) failed to exhaust her administrative remedies because a claim for racial discrimination could not reasonably be expected to grow out of the charge for color discrimination in this case.

### C.   Other Evidentiary Considerations

Since the filing of this action in 2021, Plaintiff has given two separate statements—her deposition and her affidavit.  Dkts. 23-4 (5/25/2022 deposition) & 25-1 (9/20/2022 affidavit).  Both contradict Plaintiff's allegations in her Complaint that she is African American.  Plaintiff now asserts that she is Native American. Dkt. 23-4 at 47; Dkt. 25-1 ¶ 16.

In attempting to avoid summary judgment, Plaintiff avers in her affidavit that she believed she was Native American and not African American at the time she filed her EEOC charge in August 2019 and therefore chose to proceed on the basis of "color" discrimination rather than "race" discrimination.  Dkt. 25-1 ¶ 16.[2]

---

[2] "When I [Plaintiff] filed my EEOC charge I did not know if I was allowed to claim 'race' because I believe I am Native American and not African American.  For this reason, I checked the box for color.  However, I knew my employer considered [me] to be African American." Dkt. 25-1 ¶ 16.

11

Unfortunately for Plaintiff, her earlier deposition reveals a different explanation. Plaintiff testified at her 2022 deposition that she did not discover she was Native American *until the summer of 2021*, which is two years after she filed her EEOC charge and just before she filed this lawsuit on September 27, 2021. Dkt. 23-4 at 47.

The Court need not consider an affidavit submitted by the nonmoving party that contradicts that party's deposition testimony to avoid summary judgment. *Santhuff v. Seitz*, 385 F. App'x 939, 944 (11th Cir. 2010) (citing *Van T. Junkins & Assocs. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)). In comparing Plaintiff's affidavit to her prior deposition, the Court must be mindful of the "definite distinction . . . between discrepancies . . . creat[ing] transparent shams and discrepancies . . . creat[ing] an issue of credibility." *Tippens*, 805 F.2d at 953; *Samuel v. Granite Servs. Int'l, Inc.*, No. 8:15-cv-2072-T-33TGW, 2015 WL 11493322, at *6 (M.D. Fla. Nov. 23, 2016) (quoting *Tippens*).

No doubt at least by the time Plaintiff filed this action, she knew she was Native American. Even assuming she knew she was Native American as early as August 2019 when she filed her EEOC charge, her Complaint avoids any mention of color discrimination or discrimination based on her Native American heritage. Despite that Plaintiff unequivocally believed she was a Native American at the time she filed her judicial complaint in September 2021 (and perhaps when she

12

filed her charge), the Complaint's allegations sound in racial discrimination on the premise that she is African American.  Nothing prevented Plaintiff from moving forward with her theory of color discrimination that she had claimed in her charge, as color discrimination may exist apart from race discrimination.

Finally, Plaintiff's conclusory statement in her affidavit that she "knew [her] employer considered [her] to be African American," Dkt. 25-1 ¶ 16, does not alter the Court's reasoning.[3]  For the first time, in opposition to summary judgment, Plaintiff contends that her case is a "regarded as" claim, meaning that although Plaintiff is a dark-skinned Native American, Defendant regarded her as African American or perceived her to be African American.  *See* Dkt. 26 at 7, 9.

First, Title VII does not contain "regarded as" language like the American with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)(C).  Unlike Title VII, the ADA specifically recognizes claims brought by individuals regarded as having a disability.  *Id.* (defining disability to include individuals "regarded as having [a disability]"); *Id.* § 12102(3)(b) (excluding regarded as claims if the "regarded as" disability is transitory or minor); *Id.* § 12201(h) (excluding regarded as claims in the context of reasonable accommodation).

---

[3] Plaintiff also testified at her deposition that no one at Hobby Lobby knew she was Native American, stating, "They looked at me as African American."  Dkt. 23-4 at 47.

13

Second, as just discussed, there is no record evidence that Defendant perceived Plaintiff as African American—or even as Native American.  Arguments for "regarded as" or "perceived as" claims under Title VII have been presented to some courts in the Eleventh Circuit but without success.  *See e.g.*, *Cole v. Cobb Cnty. Sch. Dist.*, No. 1:17-cv-1378-WSD-AJB, 2018 WL 460127, at *6–8 (N.D. Ga. Jan. 18, 2018) (perceived religious discrimination); *Uddin v. Universal Avionics Sys. Corp.*, 2006 WL 1835291, at *6 (N.D. Ga. June 30, 2006) (perceived national origin discrimination).[4]  Even if a "regarded as" claim under Title VII were permitted, this case does not involve Bennett misperceiving Plaintiff's race, color, or national origin.

## II. Adverse Action

If Plaintiff had exhausted her administrative remedies, she would be required to establish a *prima facie* case for race-based discrimination under Title VII.  As part of her case, Plaintiff must show she was subjected to adverse employment

---

[4] *Cole v. Cobb Cnty. Sch. Dist.*, No. 1:17-cv-1378-WSD-AJB, 2018 WL 460127, at *6 (N.D. Ga. Jan. 18, 2018), recognized that *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1300, n.42 (11th Cir. 2012), which involved national origin discrimination, discussed the possibility of "regarded as" claims under Title VII.  In response to Mr. Jones' supervisor's incorrect assessment of his national origin, Mr. Jones responded that he was "neither Native American nor Indian." *Jones*, 683 F.3d at 1300.  The supervisor responded with a slur.  *Id*.  The *Jones* court stated that "a harasser's use of epithets associated with a different ethnic or racial minority than the plaintiff will not necessarily shield an employer from liability for a hostile work environment."  *Id*.  Here, this is no evidence of any slur, much less one based on race or national origin.

action. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (*en banc*) (listing four factors of a *prima facie* case).

Plaintiff does not contend that wrongful termination was the adverse action. Instead, Plaintiff asserts that the terms and conditions of her employment were altered by Mr. Bennett's discriminatory treatment of Plaintiff. *See* Dkt. 1-2 ¶¶ 14−22. In particular, Plaintiff contends that Bennett refused to provide her, unlike other full-time lead employees, with sufficient support staff to complete her duties and to take scheduled breaks. *Id.*

In disparate treatment cases, an employee must establish an adverse employment action that "impact[ed] the terms, conditions, or privileges" of the plaintiff's job "in a real and demonstrable way." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920–21 (11th Cir. 2018) (quoting *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53 (2006)). A plaintiff "must show a *serious and material* change in the terms, conditions, or privileges of employment." *Id*. The significance and adversity of the employment action must be "viewed by a reasonable person in the circumstances." *Id*.

Plaintiff relies on an Eighth Circuit case to support her position that she suffered adverse action based on the disparity in the terms and conditions of her employment when compared to non-African American lead employees. *See*

15

*Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 671–72 (8th Cir. 2006).  In

*Wedow*, female firefighters were forced to wear helmets and protective equipment

designed for men and were not provided adequate showers, restrooms, or sleeping

quarters.  *Id.* at 667−68.  The City provided gender-appropriate clothing for the

men but not for the women, and the City required both men and women to share

the men's facilities.  *Id*. at 667−68, 672.  The Eighth Circuit affirmed a jury verdict

for the female firefighters on disparate treatment based on sex, recognizing that

adequate protective clothing and facilities were integral terms and conditions of a

firefighter's employment.  *Id*. at 671–72.

Plaintiff argues that forcing her to handle the workload of multiple people

due to inadequate staffing and limited breaks, while offering other lead employees

outside of her protected class additional breaks and assistance, created a tangible

difference in working conditions that produced a material disadvantage in

Plaintiff's ability to do her job.  Dkt. 26 at 5.  To support her contention, Plaintiff

relies on two depositions—her own deposition and that of her co-worker Pala

O'Hair.  Dkts. 23-4 & 23-14.

O'Hair (African American) testified that Bennett offered most lead

employees extra help if and when they asked.  Dkt. 23-14 at 7–11, 13.  When

O'Hair once witnessed Plaintiff asking Bennett for help, he offered Plaintiff

additional paid hours for her instead of assistance from other employees.  *Id*. at 11.

16

When O'Hair asked Bennett for extra employee help, he sent employees to help her.  *Id*.  The Court finds that this testimony fails to support Plaintiff's contention that she was treated differently, because Bennett gave another African American additional help when she asked it.

Although O'Hair stated that she does not have dark skin like Plaintiff, O'Hair testified that Bennett started treating O'Hair differently when he seemingly discovered she was African American and not just "tan."  *Id.* at 13.  However, O'Hair was unable to give concrete examples of this change in treatment, and there is no independent evidence that Bennett ever learned of O'Hair's race.  O'Hair testified that not many people at work knew of her race—perhaps only four employees.  *Id*. at 14.  O'Hair subsequently admitted that she never told Bennett that she identified as African American, and she did not know if Bennett knew of her race.  *Id*. at 22.

As further evidence that Plaintiff did not suffer adverse action, Plaintiff admits that while she was out on a prolonged leave of absence, her replacement—a white male named William McGuire—had the same responsibilities and the same level of support that Plaintiff had before she started her leave.  Dkt. 25 at 6 (admitting Dkt. 23 ¶ 51).  Plaintiff also admits that McGuire, like Plaintiff, did not receive any additional employee help from Bennett.  Dkt. 25 at 6 (admitting Dkt. 23 ¶ 52).  Bennett never had two full-time employees for the departments assigned

17

to Plaintiff and her subsequent replacement, except for one brief COVID-based period in 2020.  Dkt. 25 at 6 (admitting Dkt. 23 ¶ 53).  In sum, Plaintiff has failed to establish she suffered adverse action.

### III. Pretext

Even if Plaintiff had established a *prima facie* case of intentional discrimination, she has not shown pretext.  As discussed above, Plaintiff admits that after it became evident that her leave would last an extended amount of time, Bennett staffed the departments in which Plaintiff had worked in the same way when McGuire and other white employees worked there.  Dkt. 25 ¶¶ 15–19, 51−52.  There is no evidence that race motivated Bennett's decisions and actions in running the departments at issue.  *See Watson v. Dean Dairy Holdings LLC*, No. 2:12-cv-972-RDP, 2014 WL 1155799, at *8 (N.D. Ala. Mar. 21, 2014) (concluding that similar treatment of employees outside protected class rebuts inference of discrimination at pretext stage).  Bennett treated Plaintiff's replacements exactly the same way as Plaintiff; he routinely denied requests for additional help sufficient to timely complete the job responsibilities.  Moreover, the record is devoid of any evidence of racial animus at all.

Even assuming Plaintiff was "singled out," which the evidence contradicts, that fact without more "does not permit a jury to infer intentional discrimination based on race."  *Curet v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 21-cv-

1801-VMC-TGW, 2022 WL 4464751, at *13 (M.D. Fla. Sept. 26, 2022) (citations omitted).  Plaintiff fails to present a convincing mosaic to proceed to a jury.

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (Dkt. 22) is **GRANTED**.  The Clerk is directed to enter judgment in favor of Defendant, terminate all pending deadlines, and close the case.

**DONE AND ORDERED** at Tampa, Florida, on January 30, 2023.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of record

19